## In re N.H.

[724 A.2d 467]

No. 97-255

Present: **Amestoy, C.J., Dooley, Morse and Johnson, JJ.**

Opinion Filed December 18, 1998

*William Sorrell*, Attorney General, Montpelier, and *Marybeth McCaffrey*, Special Assistant Attorney General, and *Sean Brown*, Law Clerk, Waterbury, for Plaintiff-Appellee.

*Kristina I. Michelsen,* Vermont Legal Aid, Inc., Waterbury, for Defendant-Appellant.

**Johnson, J.** N.H. appeals from a family court order granting the Department of Developmental and Mental Health Services' application for continued treatment. N.H. contends the Department failed to present clear and convincing evidence that she was a patient in need of further treatment, as required by 18 V.S.A. § 7616(b). We affirm.*

The material facts as found by the trial court are largely undisputed. In December 1995, N.H. became incensed at her younger sister and repeatedly assaulted her, screaming profanely and accusing her of killing their father. N.H.'s older sister testified that N.H.'s sanity had steadily eroded since their father's death in 1991, and that since that time she had threatened suicide, stated that taxis and buses were following her, complained that her landlord was routinely searching her apartment, and engaged in random and senseless acts of violence such as slapping her mother, smashing a fax machine, and breaking a remote control and videotape.

Following her arraignment on charges stemming from the 1995 assault, N.H. was evaluated at the Vermont State Hospital (VSH) and found to be competent to stand trial. She subsequently pled nolo contendere to two counts of unlawful mischief and was given two four-year deferred sentences. In August 1996, the court revoked both deferred sentences for violation of the counselling condition of her sentence and placed N.H. on probation with the same conditions. Several months later, an arrest warrant was issued for new violations. Thereafter, N.H. reportedly drove her car off the road. When the police responded, she was arrested on the outstanding warrant and admitted to VSH for a psychiatric evaluation. The evaluator concluded that N.H. was incompetent to stand trial and insane at the time of the violation. By stipulation, the court entered a judgment of not guilty by reason of insanity, dismissed the violation of probation charge, and, following a hearing, committed N.H. to VSH for ninety days.

Shortly after her commitment, the director of VSH filed an application for involuntary medication. Before that application went to hearing, N.H. filed an application for discharge, and the Department filed an application for continued treatment. The parties agreed

---

* Our holding was reached without reference to the Human Services Board order of September 24, 1997.

to go forward with the hearing on the application for continued treatment, and N.H. withdrew her application for discharge.

At the hearing, N.H.'s older sister recounted N.H.'s marked decline since the 1995 assault. According to her sister, N.H. was increasingly unable to focus (requiring verbal prompting to turn while driving), displayed a flat affect, made no eye contact, wrote on the walls of her bedroom, and often spoke of suicide. She would not leave the house during daytime, but only under cover of darkness. N.H.'s younger sister also testified concerning N.H.'s steady decline, and expressed concerns for her own safety should N.H. be released without further treatment.

N.H.'s psychiatrist at VSH, Dr. Malloy, also testified. Based upon his observations and the reports of family members and hospital staff, Dr. Malloy diagnosed N.H. as suffering from a psychotic disorder which substantially affected her thought processes. He opined that her underlying psychotic features were steadily eroding her mental health and impairing her ability to function. Dr. Linder, who performed an independent psychiatric evaluation, testified that unlike Dr. Malloy he had not observed symptoms from which he could diagnose a psychosis, but conceded that further evaluation might reveal some form of personality disorder.

The court found that N.H. suffered from a mental illness that caused a substantial disorder of thought and impaired her judgment, and that as a result she posed a danger to herself or others. The court concluded, accordingly, that the Department had shown by clear and convincing evidence that N.H. was a patient in need of further treatment, and committed her to the custody of the Commissioner of the Department to be hospitalized for an indeterminate period. This appeal followed.

## I.

Before turning to N.H.'s arguments, we address the Department's claim that the appeal should be dismissed as moot. During the pendency of her appeal, N.H. entered into a stipulation with the Department to modify the order of continued treatment from one of hospitalization to one of nonhospitalization. See 18 V.S.A. § 7617(b). The new order included conditions that N.H. take all prescribed medications, keep all medical appointments, comply with the treatment plan, and refrain from any threats, assaults or other behaviors that would pose a danger to herself or others.

■ The Department argues that by agreeing to an alternate program of nonhospitalization, N.H. implicitly conceded that she has a mental illness, and tacitly agreed to continue her involuntary commitment. Accordingly, the Department contends that by entering into the stipulation N.H. has either waived or mooted her appeal. We are not persuaded, however, that N.H. waived her right to appeal the original continued-treatment order merely by agreeing to a nonhospitalization placement. No such intent is stated in the parties' stipulation, and we are unwilling to infer an intent to forfeit such a fundamental right. Furthermore, it would not be in the public interest to condition a patient's opportunity to participate in an alternative treatment plan upon the patient's willingness to forego an appeal from the original order of continued treatment.

■ Nor are we persuaded that the appeal is moot as a result of the stipulation. A case becomes moot when the issues presented are no longer "live" or the parties lack a cognizable interest in the outcome. See *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 100 (1997). Although her status has changed, N.H. remains subject to the conditions of the order of nonhospitalization. If the original order of continued treatment were reversed, the subsequent order of nonhospitalization would be void as a modification of an invalid underlying order. Accordingly, N.H. retains a cognizable interest in the outcome, and the matter cannot be considered moot.

## II.

N.H.'s principal claim on appeal is that the Department failed to meet its burden of proving by clear and convincing evidence that she was a patient in need of further treatment. As a preliminary matter, however, she asserts that the usual standard of appellate review is inadequate, and urges this Court to adopt a new and more rigorous standard. Although the precise boundaries of her proposal are unclear, she suggests, at a minimum, that we abandon the traditional rule of deferring to trial court findings in favor of something approaching de novo review. Her justification for this extraordinary level of appellate scrutiny is the fundamental liberty interest at stake in civil commitment proceedings.

This Court has long recognized that confinement for compulsory psychological treatment represents a massive curtailment of liberty necessitating a heightened standard of proof. See *In re W.H.*, 144 Vt. 595, 597, 481 A.2d 22, 24 (1984). Vermont has determined by statute

that the State must prove its case by clear and convincing evidence, see 18 V.S.A. § 7616(b), a "middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state." *Addington v. Texas*, 441 U.S. 418, 431 (1979). While we have seldom explored its precise meaning, it should be understood that the clear-and-convincing-evidence standard represents a very demanding measure of proof. Although something less than proof beyond a reasonable doubt, it is substantially more rigorous than the mere preponderance standard usually applied in the civil context, and is generally said to require proof that the existence of the contested fact is "highly probable" rather than merely more probable than not. See *Masaki v. General Motors Corp.*, 780 P.2d 566, 574 (Haw. 1989); *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 152 (Me. 1984).

The purpose of fixing a standard of proof for the trial courts is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). Given the significant deprivation of liberty that results from an order of continued treatment, the clear-and-convincing evidence standard should operate as a fundamental caution upon the minds of all judges, barring such orders unless the evidence results in a firm conviction as to the truth of the allegations to be established.

Clear and convincing does not mean, however, that the State's evidence must be wholly uncontradicted or unimpeached. See *Bishop v. Bishop*, 961 S.W.2d 770, 773 (Ark. Ct. App. 1998) ("A requirement that the evidence be clear and convincing does not mean that the evidence must be uncontradicted."); *People v. Cregar*, 526 N.E.2d 1376, 1385 (Ill. App. Ct. 1988) ("clear and convincing is not synonymous with uncontradicted or unimpeached"). Nor is a reviewing court free to ignore the trial court's findings, reweigh the evidence, and make its own independent findings and conclusions. "Even where the standard of proof is clear and convincing evidence, we will uphold trial court findings as long as there is substantial evidence to support them although they are contradicted by credible evidence." *Vermont Women's Health Center v. Operation Rescue*, 159 Vt. 141, 147, 617 A.2d 411, 414 (1992). We rely on the factfinder's assessment of the credibility of the witnesses and weighing of the evidence. See *id*. The test on review is not whether this Court is persuaded that there was clear and convincing evidence, but whether the factfinder could reasonably

have concluded that the required factual predicate was highly probable. See *Taylor*, 481 A.2d at 153.

■ We recognize the significant liberty interest at stake in a civil commitment proceeding, but as we observed in *Operation Rescue*, "even in criminal cases, with a beyond-a-reasonable-doubt standard, we take the evidence in the light most favorable to the State, and affirm a finding of guilt if the evidence fairly and reasonably supports that finding." 159 Vt. at 147, 617 A.2d at 415. Thus, if the trial court reasonably finds that the evidence supporting an order of continued treatment is clear and convincing, we will not upset that finding.

### III.

With this standard of review in mind, we turn to N.H.'s claim that the evidence failed to support the trial court's conclusion that she was a patient in need of further treatment under 18 V.S.A. § 7620. That conclusion required, in turn, a finding that N.H. suffered from a mental illness, and that, as a result of that illness, her capacity to exercise self-control, judgment, or discretion in the conduct of her affairs and social relations was so lessened that she posed a danger to herself or others. See *id.* § 7101(17). Mental illness is statutorily defined as a "substantial disorder of thought, mood, perception, orientation, or memory" which grossly impairs judgment, or the ability to recognize reality or meet the ordinary demands of life. *Id.* § 7101(14).

N.H. contends the court's conclusion that she suffered from a mental illness cannot be sustained under a clear-and-convincing evidence standard because there was conflicting expert testimony on the issue. As noted, however, clear and convincing evidence is not synonymous with uncontradicted evidence. See *Cregar*, 526 N.E.2d at 1385. Dr. Malloy testified unequivocally that N.H. suffered from a psychotic disorder which affected her thought content and ability to function. Although he indicated that his diagnosis was provisional, he used the term to signify that the diagnosis was based upon the available information, noting that N.H. had refused a number of medical and psychological tests. Dr. Malloy also stated that his diagnosis was based in large part upon the decline that he had observed in N.H.'s psychological health over several years. While Dr. Linder, contrary to Dr. Malloy, testified that he had not observed any symptoms from which he could diagnose a psychosis, he acknowledged that he had spent considerably less time with N.H. than Dr.

Malloy. Dr. Linder also conceded that N.H.'s condition might constitute a form of personality disorder, which may be accompanied by brief psychotic episodes.

The trial court was entitled to weigh the testimony of the two experts, consider their respective opportunities to observe N.H. over time, and evaluate the points on which they agreed and the areas where they diverged. See *Operation Rescue*, 159 Vt. at 147, 617 A.2d at 414 (factfinder is best situated to weigh evidence). Based on the record evidence summarized above, we cannot conclude that the court clearly erred in finding by clear and convincing evidence that N.H. suffered from a mental illness within the statutory definition.

██ N.H. also contends the evidence failed to support the court's finding that her illness so lessened her self-control and judgment that she posed a danger of harm to herself or others. The court relied on the extreme nature of N.H.'s assault on her sister, as well as evidence that she had engaged in bizarre and violent behavior in the wards, had progressively isolated herself at home and in the hospital, and had experienced thought blockages at home and in dialogues with staff and psychiatrists. The record as a whole amply supported the court's finding that without the structure of continued hospitalization, N.H.'s condition would deteriorate, her tenuous grip on self-control and reality would slip further, and she would pose a danger to herself or others. Thus, the court's conclusion that N.H. was a patient in need of further treatment was reasonably supported by the evidence, and must be upheld.

*Affirmed.*