2012 VT 65



State v. Zorn (2012-019)

 

2013 VT 65

 

[Filed 09-Aug-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 65
 
  


 No. 2012-019
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Rutland Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Robert E. Zorn
 
 
 January Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Mary
 Miles Teachout, J.
 
 
  
 
 Marc D. Brierre, Rutland County State’s Attorney, Rutland,
for Plaintiff-Appellee.

 

Matthew F. Valerio, Defender General, Anna Saxman, Deputy
Defender General and 

  Joshua S. O’Hara, Appellate Defender, Montpelier, for
Defendant-Appellant.

 

 

PRESENT:   Dooley, Burgess and Robinson, JJ., and Bent,
Supr, J. and Johnson, J. (Ret.),   

                    
Specially Assigned

 

 

¶ 1.            
DOOLEY, J.   Defendant Robert E. Zorn appeals the
superior court’s order involuntarily hospitalizing him for a period of ninety
days pursuant to 13 V.S.A. § 4822.[1] 
Defendant first contends that the hospitalization order was improper because
there was insufficient evidence to establish that he was a person in need of
treatment as defined under 18 V.S.A. § 7101(17).  Specifically, defendant
argues that the trial court lacked substantial evidence of a causal connection
between his delusional disorder and the risk of harm he posed to others. 
Second, defendant argues that Judge Teachout should have disqualified herself
from the hospitalization hearing because her ruling swept her into the class of
people she found to be in reasonable fear of harm as a result of defendant’s
mental illness.  We affirm.

¶
2.            
On March 31, 2011, defendant was charged with one count of simple
assault and one count of resisting arrest.  The State alleged that on
March 30, 2011, defendant went uninvited to attorney Herbert Ogden’s office in
Danby.  Attorney Ogden represents defendant’s brothers in a contested
estate matter against defendant.  Defendant demanded that attorney Ogden
pay defendant money that he alleged that attorney Ogden owed him.  Not
obtaining immediate satisfaction, defendant punched attorney Ogden in the jaw
and attempted to hold his  arms behind his back and place him under
arrest.  After repeatedly being told to leave by attorney Ogden, defendant
ultimately left the office.  

¶
3.            
After defendant left, attorney Ogden complained to the police, and two
Vermont State Police Troopers responded and obtained a sworn written statement
from him.  Based on the statement, the troopers located defendant and
stopped him while he was driving his car.  Defendant immediately stepped
out of his vehicle and proceeded to walk in the direction of the police
vehicle.  After disregarding the troopers’ multiple commands to return to
his vehicle or get on his knees, defendant stated that he could not get on his
knees and sat on his rear.  The troopers then commanded that defendant lie
down on his stomach and put his hands out on his side, and defendant once again
failed to comply with their directions.  Consequently, one of the troopers
deployed his taser.  The trooper was then able to secure defendant’s hands
and take him into custody.  

¶
4.            
The troopers found two rifles with clips and ammunition in defendant’s
vehicle.  After the traffic stop, defendant advised that he was having
neck and knee pains from a preexisting injury.  An ambulance was
contacted, and defendant was transported to the Rutland Regional Medical
Center.  Defendant was subsequently evaluated at the hospital and released
into State Police custody.  

¶
5.            
The next day, March 31, 2011, defendant was arraigned before a superior
judge on one count of simple assault and resisting arrest.  During the
arraignment, a social worker who had screened defendant that day testified
that, in her opinion, defendant was a person in need of treatment and
recommended that he have an inpatient evaluation at the Vermont State
Hospital.  At the conclusion of the arraignment, the judge ordered,
pursuant to 13 V.S.A. § 4815(g), an inpatient competency evaluation of
defendant.  

¶
6.            
Dr. Paul Cotton, a forensic psychiatrist, examined defendant at the
Vermont State Hospital on April 6, 2011, and determined that he was incompetent
to stand trial and insane at the time of the offense.  The doctor put his
findings into a formal report that day.  At a bail review hearing on April
15, 2011, the court, relying on Dr. Cotton’s report, set the matter for a
competency hearing.    

¶
7.            
Dr. Cotton’s April 6, 2011 report, which formed the basis for the
court’s decision at the competency hearing, diagnosed defendant with a
psychotic disorder characterized by delusional belief and disorganized thought
processing and found him mentally incompetent to stand trial.  The report
observed that defendant’s delusional beliefs focused on a wide range of persons
who defendant believes are conspiring against him.  During his evaluation,
defendant described his belief that his brothers and attorney Ogden, with the
help of the superior judge who was presiding over the probate matter, falsified
records and forged his mother’s will.  Additionally, defendant claimed
that the State had “illegally seized” his mother and taken her off life
support, leading to her death.  Defendant also believed that Dr. Cotton
was unfit to perform the examination because defendant was suing officers of
the State and Dr. Cotton was reimbursed by the State.  The report further
noted that State Hospital records indicated that defendant has long believed
that the State is systematically persecuting him.  Accordingly, Dr. Cotton
determined that defendant was not mentally competent to stand trial because he
lacked a sufficient rational understanding of the legal proceedings and would
not be able to consult with his attorney with a reasonable degree of rational
understanding.  

¶
8.            
At the competency hearing on June 12, 2011, the trial court agreed with
Dr. Cotton’s findings that defendant was not mentally competent to stand
trial.  The court found that defendant lacked a rational understanding of
the proceedings against him and that defendant’s ability to consult with his
attorney with a reasonable degree of rational understanding would be impaired
because of defendant’s preoccupation with his persistent delusional
beliefs.  The court set the matter for a hospitalization hearing.[2]  

¶
9.            
After learning that Judge Mary Teachout would be presiding over
defendant’s case, defendant moved on December 14, 2011 to recuse her because
she was named as a defendant in a civil suit defendant had filed in federal
court.[3] 
Administrative Judge Amy Davenport denied defendant’s motion because he failed
to make “a clear and affirmative showing of bias or partiality.”  

¶
10.        
In making that ruling, Judge Davenport relied heavily on Ball v.
Melsur, 161 Vt. 35, 633 A.2d 705 (1993).  In that case, this Court
affirmed the administrative judge’s denial of the defendant’s motion for
disqualification of the trial judge, holding that there is no per se rule
mandating recusal where the judge is the subject of a judicial complaint filed
by an attorney who is appearing in the case before the judge.  Id.
at 39, 633 A.2d at 709.  Here, Judge Davenport reasoned that, similar to
the situation in Ball, a per se lack of impartiality does not arise
solely because the judge is or has been the subject of a lawsuit brought by the
litigant who seeks the judge’s recusal.  Judge Davenport further explained
that the policy consideration cited by this Court in Ball—that recusal
should not be mandated every time a judge is the subject of a judicial
complaint because then an attorney or litigant “need only file a complaint,
possibly groundless, to avoid a particular judge thereafter”—applies when a
litigant sues a judge as well.  Id. 

¶
11.        
Before the hospitalization hearing, Dr. Cotton reexamined defendant and
on December 21, 2011, filed a new competency report, which concluded that
defendant remained incompetent to stand trial.  The report did not cover
any other issue.[4] 
The report found, similar to the earlier report, that defendant suffers from a
persecutory type of delusional disorder.  Defendant’s thought content was
characterized by delusional beliefs about a conspiracy of others to violate his
legal rights.  Attorney Ogden, the state police, the “court,” and Dr.
Cotton are some of the persons defendant noted as part of a conspiracy against
him.  Defendant’s delusional beliefs are persistent and prolonged. 
Further, defendant is preoccupied by his fixed delusional beliefs and does not
acknowledge his difficulty.  During the evaluation, defendant’s responses
to some of the questions were irrelevant and focused on his delusional
beliefs.  

¶
12.        
After Judge Davenport denied defendant’s motion and at the beginning of
the December 22, 2011 hospitalization hearing, Judge Teachout noted that the
court had been presented with a proposed stipulation requesting the
nonhospitalization of defendant.  She explained, however, that the court
could not accept the stipulation as there was not sufficient information to
support a conclusion of nonhospitalization.  Accordingly, the court went
forward with the hearing. 

¶
13.        
Dr. Cotton testified at the hospitalization hearing as to the contents
of his report, and the report, along with the earlier one, was admitted to
evidence.  The other witness at the hearing was attorney Ogden.  In
addition to testifying about the alleged assault, attorney Ogden testified that
he had previously received a voicemail from defendant in which the defendant
threatened to harm him.  

¶
14.        
At the conclusion of the hearing, the trial court found that defendant’s
March 30, 2011 assault of attorney Ogden was related to defendant’s contested
estate litigation with his brothers in which attorney Ogden is involved. 
The court confirmed that during the alleged assault, defendant demanded that
attorney Ogden pay him the money that he believed that attorney Ogden owed him
as a result of the estate litigation.  The court found that defendant’s
capacity for self-control and his judgment is so lessened that, with respect to
persons involved in the subject matter of his delusion—a conspiracy to violate
his legal rights—defendant does pose a risk of harm as a result of his
disorder.[5] 
This risk of harm is particularly focused on persons related to defendant’s
legal matters.  The court stated that this delusion did not end with the
March 30 incident; defendant continues to be preoccupied with the subject as
demonstrated by Dr. Cotton’s December report.  Thus, defendant’s condition
is unchanged, and his delusional beliefs are fixed. 

¶
15.        
Based on the findings, Judge Teachout concluded that defendant was a
“person in need of treatment” as defined by 18 V.S.A. § 7107(17) in that he has
been shown to suffer from a mental illness, and as a result of that mental
illness, has a diminished capacity to exercise self-control or judgment. 
Based on this conclusion, the court issued a hospitalization order pursuant to
18 V.S.A. § 4822(a), committing defendant to the custody of the Commissioner of
Mental Health for a period not exceeding ninety days.  

¶
16.        
On appeal, defendant argues that the hospitalization order was improper
because there was insufficient evidence to establish that defendant was a
person in need of treatment as defined under 18 V.S.A. § 7101(17). 
Specifically, defendant asserts that the evidence did not support a causal
connection between his mental illness and the alleged offenses.  

¶ 17.         The
court must consider commitment if a defendant is reported by an examining
psychiatrist following examination “to have been insane at the time of the
alleged offense” or if the court finds defendant to “be incompetent to stand
trial due to a mental disease or mental defect.”  13 V.S.A. §§ 4820(1),
(2).  Both of these triggers were present here.[6]  In order to involuntarily
hospitalize a defendant in a criminal case, the court must find that defendant is
“a person in need of treatment or a patient in need of further
treatment.”  13 V.S.A. § 4822(a).  This is the same standard that is
used to determine whether a proposed patient will be committed in a civil
proceeding.  See 18 V.S.A. § 7617(b); see also 13 V.S.A. § 4821 (stating
that procedures in hearings under chapter 181 of Title 18 apply in criminal
commitment hearings for defendants who are mentally ill).  A “person in need of treatment” is defined in §
7101(17) as: 

[A]
person who is suffering from mental illness and, as a result of that mental
illness, his or her capacity to exercise self-control, judgment, or
discretion in the conduct of his or her affairs and social relations is so
lessened that he or she poses a danger of harm to himself, to herself, or to
others . . . .

 

18 V.S.A. §
7101(17) (emphasis added).  Pursuant to 18 V.S.A. § 7616(b), the State
bears the burden of proving its case by clear and convincing evidence in a
civil commitment.  We have held that this standard of proof also applies
to a commitment proceeding in a criminal case.  See State v. McCarty,
2006 VT 4, ¶ 12, 179 Vt. 593, 892 A.2d 250.  In this case, the court had
to find that the State had shown, by clear and convincing evidence, that
defendant suffers from a mental illness and presents a danger of harm to
himself or others as a result of his mental illness.  The court made the
finding here.

¶ 18.         This
Court has held that the clear and convincing evidence standard requires proof
that the existence of a contested fact is highly probable rather than merely
more probable than not.  In re N.H., 168 Vt. 508, 512, 724 A.2d
467, 470 (1998).  “Clear and convincing does not mean, however, that the
State’s evidence must be wholly uncontradicted or unimpeached.”  Id.
at 512, 724 A.2d at 470.  Furthermore, this Court will uphold the superior
court’s findings as long as there is substantial evidence to support such
findings even though they may be contradicted.  Id. (citing Vermont
Women’s Health Ctr. v. Operation Rescue, 159 Vt. 141, 147, 617 A.2d 411,
414 (1992)). The test, as articulated in In re N.H., is “whether the
factfinder could reasonably have concluded that the required factual predicate
was highly probable.”  Id. (citing Taylor v. Comm’r of Mental
Health, 481 A.2d 139, 153 (Me. 1984)); see also State v. McCarty,
2006 VT 4, ¶ 12.  Thus, we view the evidence in the light most favorable
to the State and affirm the superior court’s findings “if the evidence fairly
and reasonably supports that finding.”  In re N.H., 168 Vt. at 512,
724 A.2d at 470 (quoting Operation Rescue, 159 Vt. at 147, 617 A.2d at
415).  

¶
19.        
Defendant argues on appeal that the court could not make the necessary
findings based on the evidence presented.  Specifically, defendant argues
that the court could not find the causal connection between defendant’s mental
illness and the conclusion that he is dangerous to others, see 18 V.S.A. §
7101(17) (dangerousness must be present “as a result of that mental illness”),
because he claims that Dr. Cotton did not provide an opinion on whether
defendant’s dangerousness was caused by his mental illness and his testimony
related to defendant’s competency to stand trial and not his
dangerousness.  We have looked at the sufficiency of the evidence to show causation
between mental illness and dangerousness in two recent decisions—State v.
J.S., 174 Vt. 619, 817 A.2d 53 (2002) and McCarty, 2006 VT 4. 
In J.S., the State claimed that defendant engaged in erratic driving as
a result of delusions that he was being poisoned by phosphorous.  The
trial court concluded that the erratic driving was caused by the
delusions.  We noted: “To the extent that the district court was required
to infer any part of its factual conclusion, we presume that the court properly
inferred the connection between appellant’s mental illness and his erratic
driving from its sound factual findings.”  J.S., 174 Vt. at 621,
817 A.2d at 56.  

¶
20.        
In McCarty, defendant was charged with resisting arrest for
struggling violently while she was being arrested for failing to appear to
answer a charge of truancy.  In a hospitalization hearing, the evidence
was the testimony of the officers about her violent struggles and Dr. Cotton
who opined that defendant was incompetent to stand trial and insane at the time
of the offense and that the mental illness made defendant violent. 
 In arguing that the evidence was insufficient, defendant attacked Dr.
Cotton’s opinions as conclusory and speculative.  McCarty, 2006 VT
4, ¶ 14.  We rejected that argument and held that the superior court
reasonably concluded that defendant posed a risk of harm as a result of her
mental illness due to its “synthesi[s of] valid findings.”  Id. ¶
13.   

¶ 21.         We
recognize that in this case Dr. Cotton was never asked whether defendant was
dangerous to himself or others or whether the dangerousness was a result of
defendant’s mental illness.  Nevertheless, there was substantial evidence
to support the trial court’s findings.  

¶ 22.         Both
of Dr. Cotton’s reports found defendant suffers from a psychotic disorder
characterized by delusional beliefs and disorganized thought processing. 
The reports concluded that defendant’s delusional beliefs focused on a wide
range of persons who were conspiring against him to violate his legal
rights—specifically, defendant believed those involved in his legal matters
were conspiring against him.  This class of people included attorney Ogden
because he represented defendant’s brothers in a contested family estate
matter.  

¶ 23.         The
most important evidence was Dr. Cotton’s opinion, contained in his first
report, that defendant was “insane at the time of the alleged offenses.” 
Dr. Cotton explained the test for insanity:  “A person is not responsible
for criminal conduct if at the time such conduct is the result of mental
disease or defect and he lacks the substantial capacity to appreciate the
criminality or wrongfulness of his conduct or conform his conduct to the
requirements of the law.”  He opined that defendant had a mental disease
that was “active at the time of his alleged offenses” and he could not conform
his conduct to the requirements of the law either at the roadside when stopped
by the police or in attorney Ogden’s office.  This report directly tied
defendant’s violent behavior to his mental illness and was a sufficient basis
for the court to find the causal connection.  The trial court’s
hospitalization order was supported by its findings which, in turn, were
supported by the evidence.  

¶ 24.         We
now address defendant’s claim that Judge Teachout should have disqualified
herself from the hospitalization proceedings because her factual findings
included her in the class of people she found to be in reasonable fear of harm
as a result of defendant’s mental illness.  This claim is based on the
court’s finding that defendant’s actions “placed others in reasonable fear of
physical harm to themselves: Herbert Ogden and others associated with his fixed
delusions about a conspiracy.”[7] 
We conclude that this claim was not properly preserved, as defendant raises it
only on appeal.[8]
 See DeLeonardis v. Page, 2010 VT 52, ¶ 31, 188 Vt. 94, 108, 998
A.2d 1072, 1081 (2010) (where litigant fails to seek disqualification of trial
judge in trial court, issue is not preserved for appeal; decided under V.R.C.P.
40(e)).

¶ 25.         V.R.Cr.P.
50(d)(1) states, in relevant part: “A motion for disqualification of a judge
shall be made as soon as
practicable after the cause or ground becomes known.”[9]
 Id. (emphasis added).  Defendant claims that it
was not until Judge Teachout’s ruling at the hospitalization hearing that he
had knowledge of the grounds for her disqualification—that she was among the
class of people found to be in reasonable fear of harm from defendant.  He
argues that this should excuse him from any requirement to have sought recusal
earlier.   

¶ 26.         In
this case, the alleged ground for disqualification of Judge Teachout—that she
may be considered to be in the class of people in reasonable fear of defendant
as a result of mental illness—would have been known to defendant long before
the hospitalization order was made.  It was of no surprise that defendant
had sued Judge Teachout in federal district court along with a number of other
Vermont judges or that Judge Teachout had imposed Rule 11 sanctions on
defendant twice before.  See Zorn, 2011 WL 4748255; see also
Zorn v. Smith, 2011 VT 10, ¶ 18, 189 Vt. 219, 19 A.3d 112; Zorn
v. Ryan, No. 2008-445, 2009 WL 2413733, at *1 (Vt. Apr. 15, 2009). 
That Judge Teachout is involved in litigation with defendant was public
information.  Furthermore, given defendant’s fixed delusional belief of a
conspiracy against him by those involved in his legal matters, which was
addressed in both of Dr. Cotton’s reports, defendant was aware of the possible
grounds for disqualification of Judge Teachout as soon as she was assigned to
his case.  Therefore, if he seriously wished to pursue disqualification on
these grounds, defendant should have moved for her disqualification prior to
the hospitalization hearing. 

¶ 27.         Even
without the special circumstances involved in this case, defendant’s position
on when the grounds for disqualification arose and his theory on the grounds
for disqualification are in conflict.  The Vermont Code of Judicial
Conduct requires a judge to disqualify himself or herself when “the judge’s
impartiality might reasonably be questioned.”  Vermont Code of Judicial
Conduct, A.O. 10, Canon 3(E)(1).  This standard is met, if at all, when
the judge faces a decision that may be influenced by improper factors, not
after the judge has made the decision.  Thus, in this instance, the
impropriety, if any, is in sitting on a case where the result might put the
judge in danger; not in ordering commitment or in finding defendant was
dangerous to her.  Defendant failed to make a motion to disqualify before
Judge Teachout decided to sit on the hospitalization hearing.  

¶ 28.         Defendant
cites Velardo v. Ovitt, 2007 VT 69, 182 Vt. 180, 933 A.2d 227, decided
under the similar civil rule, arguing that it stands for the proposition that
when the grounds for disqualification arise after all questions of fact have been
resolved, this Court must address the merits of a claim of disqualification and
apply a “recusal standard,” regardless of whether a motion for disqualification
was made below.  Defendant’s reliance on Velardo is
misplaced.   Velardo was a case where the grounds for
disqualification were not known at the time of the proceedings in the lower
court.  Further, the administrative judge refused to rule on a
disqualification motion because the proceedings before the trial court were
completed, requiring this Court to confront whether the lower court judgment
should be reversed because of the judge’s conflict of interest. 
 Here, there was no attempt to go to the administrative judge with a
timely motion.  

¶ 29.         However,
even if defendant’s argument were properly preserved, recusal was not necessary
in the case below.  This Court outlined the standard for claims that a
judge should have been disqualified in Leonard v. Wilcox, 101 Vt. 195,
142 A. 762 (1928):  “[I]t must appear that it is the judge who is prejudiced
against the party, and not that it is the party who is prejudiced against the
judge;” id. at 215, 142 A. at 771 (quoting State v. Grinstead, 64
P. 49, 51 (Kan. 1901)), and the existence of bias against the respondent “must
be clearly established by the record.”  Id. at 215, 142 A. at 771.
 In order to color a claim of judicial disqualification for the presiding
judge, “[a] defendant must affirmatively show bias or prejudice directed
against him.”  State v. Beshaw, 134 Vt. 347, 351, 359 A.2d 654, 656
(1976). 

¶
30.        
Recusal is rarely required when a judge has been threatened by a
criminal defendant.  See, e.g., In re Basciano, 542
F.3d 950, 956-57 (2d Cir. 2008) (concluding recusal not required); United
States v. Holland, 519 F.3d 909, 912-13 (9th Cir. 2008) (same).
  Basciano held that recusal was not necessary even after the
presiding judge in a capital case was discovered to be on a “hit-list” authored
by the defendant.  542 F.3d at 955-58.  The court held that even in
situations where a defendant lodges a serious threat against a presiding judge,
that judge may still decline to recuse himself.  Id. at 956. 
Allowing such judicial discretion curbs the ability of parties to use threats
as a means of judge-shopping.  Id. at 957.  The need for
recusal following defendant threats is only present in exceptional
circumstances where “an objective, disinterested observer[,] fully informed of
the underlying facts, [would] entertain significant doubt that justice would be
done absent recusal.”  Id. at 956 (quoting United States v.
Amico, 486 F.3d 764, 775 (2nd Cir. 2007)).  

¶ 31.         An
example of a case where recusal was warranted from a defendant’s threats is United
States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994).  The defendant in Greenspan
was able to demonstrate that knowledge of a threat appeared to play a role in
the presiding judge’s decision to accelerate sentencing and refusal to grant a
continuance after the defendant had acquired new counsel a mere two days prior
to the sentencing hearing.  Id. at 1007. 

¶ 32.         In
the present case, defendant failed to present any evidence of bias or prejudice
caused by defendant’s “threat” against Judge Teachout.[10]  It is, necessarily, the job of a
judge to deal with litigants who are disruptive and even threatening. 
Even where a threat is aimed at a judge, it is expected that the judge can
fairly preside and make the decisions presented. Defendant’s contention that Judge
Teachout was included in the threatened class of “others” is speculative at
best.  Even if Judge Teachout were a member of the class of people placed
in reasonable fear of defendant, this fact alone would not be grounds for
recusal.  A disinterested, objective observer would not conclude that
injustice would result if the judge continued to sit after a threat.
 Defendant’s argument that the judge was required to recuse herself is
without merit. 

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1]
 The superior court’s hospitalization order also found defendant not
competent to stand trial for the criminal offense for which he is charged, pursuant
to 13 V.S.A. § 4817, in that he suffers from a persecutory type of delusional
disorder.  Defendant appeals only the portion of the order involuntarily
hospitalizing him under 13 V.S.A. § 4822.





[2]
 The judge set the matter for a hospitalization hearing but no date was
specified.  The hearing was eventually held on August 23, 2011, but
defendant failed to appear.  At a December 15, 2011 motion hearing before
a new judge, defendant claimed that he never received notice of the August 23
hearing.  The judge made clear to defendant that he was required to appear
at the rescheduled hospitalization hearing at 9:00 AM on December 22, 2011.

 





[3]
 See Zorn v. Vermont, No. 1:11-cv-221-jgm, 2011 WL 4748255,
at *1 (D. Vt. Oct. 6, 2011).  Defendant initiated the action in the United
States District Court for the Northern District of New York on August 19,
2011.  Id.  The case was subsequently transferred to the
District of Vermont on September 14, 2011 because of improper venue.  Id.  
The United States District Court for the District of Vermont dismissed the
case, id. at *3 (dismissing with prejudice), and at the time of the
motion to recuse, defendant had appealed to the United States Court of Appeals
for the Second Circuit.  





[4]
 The report was ordered at a December 15, 2011 hearing at the request of
the prosecution and was specifically limited to whether defendant was competent
to stand trial.  Accordingly, Dr. Cotton’s new report did not evaluate
whether defendant was insane at the time of the alleged offenses. 

 





[5]  In making its ruling, the court
reiterated the findings of Dr. Cotton’s December 21, 2011 report. 
Although the court did not mention in its findings the section of Dr. Cotton’s
April 6 report finding defendant insane at the time of the offense, this was in
the record, admitted as evidence.  

 





[6]
 There are two other triggers, not applicable here.  See 13 V.S.A. §§
4820(3), (4).





[7]
 Judge Teachout made oral findings on the record, which made this same
point, also without specifying who “others” were.  We assume, for purposes
of defendant’s argument, that the “others” included the presiding judge,
although that is an inference drawn by defendant.

 





[8]
 As discussed above, defendant had earlier moved to disqualify Judge
Teachout because he had filed a federal civil suit against her. 
Administrative Judge Davenport denied the motion.  On appeal, however,
defendant does not challenge Judge Davenport’s denial of the motion he made in
the superior court.  Rather, defendant raises a new claim for Judge
Teachout’s disqualification that was not raised below.  

 





[9]
 The rule goes on to state that a motion filed “in violation of this
paragraph” shall not be denied for this reason, but the violation may be
grounds for sanctions against the lawyer or party who filed it.  The
identical language appears in V.R.C.P. 40(e)(1), and the Reporter’s Notes to
that rule indicate that the intent is that a motion to disqualify not be denied
“on account of its tardiness.”  Reporter’s Notes—1988 Amendment, V.R.C.P.
40.  We do not believe that this language affects the requirement of
preservation.  Preservation was required to raise judicial
disqualification claims on appeal before the addition of the recusal procedure
in the civil, criminal and probate rules, see In re B.L., 145 Vt. 586,
590, 494 A.2d 145, 147 (1985), and we held in DeLeonardis, after the
recusal provisions were added to the rules, that preservation remained a
requirement.  See 2010 VT 52, ¶ 31.  Similarly, appellate court
decisions have required that litigants preserve recusal issues under 28 U.S.C.
§ 144, which states that an affidavit demonstrating the bias of a judge “shall
be filed not less than ten days before the beginning of the term at which the
proceeding is to be heard, or good cause shall be shown for failure to file it
within such time.” See United States v. De La Fuente, 548 F.2d 528, 541
(5th Cir. 1977).





[10]
 We have held above that defendant failed to preserve this
challenge.  The failure also undermines the substance of the challenge
because there are no facts that would take this out of the general rule that
threats alone will not require recusal.