*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2013-339

MARCH TERM, 2014

In re J.R.                                    }    APPEALED FROM:
                                              }
                                              }    Superior Court, Rutland Unit,
                                              }    Family Division
                                              }
                                              }    DOCKET NO. 67-7-13 Rcmh
                                              
                                                   Trial Judge: William D. Cohen

In the above-entitled cause, the Clerk will enter:

Respondent J.R. appeals from the trial court's order granting the State's application for continued treatment. He argues that the State failed to meet its burden of proof and that the court's findings are insufficient to support its decision. We affirm.

In May 2013, the superior court placed J.R. into the custody of the Commissioner of Mental Health for ninety days after finding J.R. to be a person in need of treatment under 18 V.S.A. § 7101(17). Prior to the expiration of this order, the Commissioner filed an application for continued treatment of J.R. pursuant to 18 V.S.A. § 7620(a).

The following evidence was presented at the hearing on the application. Dr. Gordon Frankle testified that he had been J.R.'s treating psychiatrist since J.R.'s admission to the hospital. He opined that J.R. suffered from a psychotic disorder, most likely a schizoaffective disorder. J.R.'s mental illness manifested itself in delusions and paranoid ideation. J.R. on various occasions had expressed paranoid thoughts regarding conspiracies against him that were perpetrated by the U.S. government and different government agencies. Dr. Frankle stated that these characteristics affected J.R.'s capacity to exercise self-control or judgment over his daily affairs. He explained that J.R.'s ability to interact with others and his ability to have a basis in reality in those interactions was dramatically affected by those internal thought processes. J.R. was diagnosed with this condition in 2001, and he had engaged in similar behavior in the past. He had been exhibiting more aggressive behavior, however, during his recent hospitalization. Dr. Frankle considered J.R. to be an extreme danger to others and potentially to himself based on his interactions with others. He based his opinion on various incidents that had occurred during J.R.'s hospitalization. On multiple occasions, J.R. had directly threatened Dr. Frankle and stated that he was going to kill him. Other times, J.R. stated that he was going to beat the doctor up. J.R. interrupted the doctor's testimony at the hearing and reiterated these types of statements.

As indicated, the doctor testified that J.R.'s behavior had escalated during hospitalization. In addition to threatening the doctor, he also tried to choke a nurse. Additionally, J.R. went into another patient's room, pushed the patient off of a chair and kicked the patient twice. He had chased a staff member on the night before the hearing, threatening her and spitting at her multiple times. J.R. then chased another staff person. When he returned to his room, he threw a

chair against wall. J.R. said that the staff person had looked at him with a psychotic stare and that she should have been punched in the face. J.R. then threatened to punch the doctor in the face and beat him up. The doctor testified that J.R.'s history of violence in addition to his continued threats of violence indicated that J.R. was at high risk for perpetrating violence.

When the doctor was asked if the assaults and threats were connected to J.R.'s mental illness, he replied that it was difficult to tell. The doctor found J.R.'s behavior with staff and other patients to be unpredictable. He said the assaults and threats "seem to be based in – his responses seem to be based in some degree of psychotic nature as discussed." He cited J.R.'s comment about the nurse's "psychotic stare" as an example. Dr. Frankle testified that there was treatment available for J.R., and that J.R. was not at that time receiving adequate treatment because he was not being medicated. The doctor noted that J.R. had shown improvement during the short period in which he had been involuntarily medicated. Dr. Frankle opined that J.R. continued to need treatment because he continued to suffer from a psychotic illness that required treatment with medications. J.R. was currently paranoid and delusional. If released, the doctor could not predict what he might do, but he anticipated that J.R.'s illness would continue.

At the close of the hearing, the court made findings on the record. It found that Dr. Frankle had testified to a reasonable degree of medical certainty that J.R. was a danger to others based on J.R.'s behavior at the hospital and the doctor's personal observations of J.R. The doctor's review of J.R.'s medical records and his own observations showed that J.R. suffers from a schizoaffective disorder manifested by paranoid and delusional thoughts. Accordingly, the court granted the State's request for an order of continued treatment. The court issued a written order as well. In this order, the court stated that it had found by clear and convincing evidence that (1) J.R. was a person in need of treatment at the time of admission or application and a patient in need of further treatment at the time of the hearing; (2) his treatment at the hospital is adequate and appropriate; and (3) there is no less restrictive alternative treatment available to him. The court thus granted the application for continued treatment and ordered respondent committed to the care and custody of the Commissioner to be hospitalized for one year. This appeal followed.

J.R. first argues that the State failed to prove by clear and convincing evidence that his mental illness caused his allegedly dangerous behavior. He points to Dr. Frankle's testimony that J.R.'s violent behavior "seem[s] to be based in some degree of psychotic nature." J.R. also cites Dr. Frankle's testimony that he could not predict what would happen if J.R. was released from the hospital. He maintains that these statements do not meet the clear and convincing evidence standard of proof. J.R. also asserts that the court failed to make sufficient findings of fact upon which to base its conclusion that he is a patient in need of further treatment. Specifically, he complains that the court made no specific finding regarding the link between his mental illness and his allegedly dangerous behavior.

"To succeed on an application for continued treatment, the State must show, by clear and convincing evidence, that the patient is in need of further treatment as defined by statute." In re T.C., 2007 VT 115, ¶ 7, 182 Vt. 467. "[T]he clear and convincing evidence standard requires proof that the existence of a contested fact is highly probable rather than merely more probable than not." State v. Zorn, 2013 VT 65, ¶ 18. As relevant here, a "patient in need of further treatment" means a "person in need of treatment." 18 V.S.A. § 7101(16). "A person in need of treatment" is in turn defined as "a person who is suffering from mental illness and, as a result of that mental illness, his or her capacity to exercise self-control, judgment or discretion in the

conduct of his or her affairs and social relations is so lessened that he or she poses a danger of harm to himself, to herself, or to others." Id. § 7101(17).

On review, we "will uphold the superior court's findings as long as there is substantial evidence to support such findings even though they may be contradicted." Zorn, 2013 VT 65, ¶ 18. We must decide "whether the factfinder could reasonably have concluded that the required factual predicate was highly probable." Id. (citations omitted). In conducting our analysis, "we view the evidence in the light most favorable to the State and affirm the superior court's findings if the evidence fairly and reasonably supports that finding." Id. (citations omitted).

J.R. does not dispute that he suffers from a mental illness. The question is whether the trial court could reasonably have concluded that, as a result of that mental illness, it was highly probable that his capacity to exercise self-control, judgment or discretion in the conduct of his affairs and social relations is so lessened that he poses a danger of harm to himself or others. J.R. relies on several sentences of Dr. Frankle's testimony to support his contention that this standard cannot be met. Looking at Dr. Frankle's testimony as a whole, however, we find it sufficient to support the court's decision. Dr. Frankle testified that J.R.'s mental illness manifests itself in delusions and paranoid ideation, and that these characteristics affect J.R.'s capacity to exercise self-control or judgment over his daily affairs, including in his interactions with others. Dr. Frankle considered J.R. to be an extreme danger to others and potentially to himself based on his interactions with others. The doctor opined that J.R.'s reactions seemed to be based in some degree of psychotic nature as testified to earlier by the doctor. He cited as an example J.R.'s statement that he had physically attacked a nurse because she gave him a "psychotic stare." All of this evidence, including Dr. Frankel's statement that J.R.'s violent actions were driven by, or "based in," his mental illness, sufficiently supports the court's decision that J.R. was a person in need of further treatment.

In its oral findings, the court expressly noted Dr. Frankle's testimony that J.R. is a danger to others "based [in part] on . . . his review of the medical records that he does suffer from schizophrenic shizoaffective disorders" which manifest in paranoid and delusional thoughts. The court made a written finding that J.R. is a person in need of further treatment. There is no question here as to what the court decided and why. Cf. Bonanno v. Bonanno, 148 Vt. 248, 251 (1987) (noting that trial court's findings will be deemed insufficient if this Court is left to speculate as to basis of trial court's decision). We affirm.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3