2012 VT 98

**STATE of Vermont v. John STEUERWALD**

[58 A.3d 970]

No. 12-378

¶ 1. November 14, 2012. Defendant was held without bail pursuant to 13 V.S.A. § 7553a on charges of aggravated domestic assault, 13 V.S.A. § 1043(a)(1); furnishing alcohol to a minor, 7 V.S.A. § 658(a)(1); and violating conditions of release, 13 V.S.A. § 7559(e). Defendant appealed and a de novo review was held on October 26, 2012, before Associate Justice Brian L. Burgess of the Vermont Supreme Court as provided by 13 V.S.A. § 7556(d) and V.R.A.P. 9. The parties agreed to rely on the record of the criminal division proceedings below. No new record evidence was admitted on appeal.

¶ 2. Defendants may be held without bail under 13 V.S.A. § 7553a when charged with a felony

> an element of which involves an act of violence against another person . . . [and] when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

Defendant does not dispute the findings below or that the evidence of guilt is great in this case, but contends the court's denial of release on conditions to the care and custody of his mother was not supported by clear and convincing evidence.

I. Findings

¶ 3. The reviewing justice owes no deference to the trial court's findings or conclusions. *State v. Madison*, 163 Vt. 390, 393, 659 A.2d 124, 126 (1995). However, "nothing prevents a reviewing court from adopting *unchallenged* findings . . . of the trial court." *Id.* Under the clear and convincing standard, the following findings are adopted from the trial court, based on its Decision on Release of October 3, 2012, the prior record, and the latest arguments.

¶ 4. The events giving rise to the present appeal occurred on March 8, 2011. Defendant's neighbor arrived at his apartment on Elm Street in Montpelier at approximately midnight. Neighbor heard loud talking from defendant's apartment. When neighbor went to defendant's door and asked defendant to quiet down, neighbor saw a woman, later identified as the complainant, defendant's girlfriend, who stated that defendant had hurt her. Neighbor advised that he would call 911 if the noise continued.

¶ 5. Minutes later, neighbor heard a loud crashing sound, complainant pleading for defendant to stop hurting her, and defendant threatening complainant. Neighbor called 911. Thereafter neighbor heard defendant threatening complainant and complainant begging in response. After neighbor's call to 911 ended, neighbor heard complainant's cries increase in frequency and desperation. Neighbor also heard defendant threaten complainant's eyesight.

¶ 6. Two police officers, Sergeant Richard Cleveland and Officer Jacqueline Adams, were dispatched to the scene at approximately 12:40 a.m. Sergeant Cleveland could hear defendant and complainant screaming from the apartment. Sergeant Cleveland noted that defendant's

screams were louder than complainant's, and that defendant sounded like he was growling.

¶ 7. When the police officers approached defendant's apartment door, defendant's screaming and growling could still be heard. Muffled gurgling and choking sounds emanating from complainant were also audible. Sergeant Cleveland kicked in the door and the police officers entered the apartment. Defendant was straddling complainant with one knee on each side of her and had his hands around her neck, choking her. Complainant was unresponsive. Her eyes were rolled back in her head and blood was coming out of one of her eyes. Defendant was still growling.

¶ 8. Sergeant Cleveland screamed at defendant. Defendant looked at Sergeant Cleveland, looked back at complainant, and continued growling and strangling her. Sergeant Cleveland grabbed defendant and used his body motion to forcibly remove defendant from complainant. Defendant struggled to resist Sergeant Cleveland and was rambling nonsense. Over the course of twenty-six years and hundreds of domestic assaults, this was the most severe domestic assault that Sergeant Cleveland had witnessed firsthand. Sergeant Cleveland testified that he had no doubt that defendant would have killed complainant if he had responded just a few minutes later because "there was nothing that was going to stop [defendant] at that time."

¶ 9. At the time of the charged events, defendant was subject to a court-ordered condition of release from a previous case which, among other things, prohibited defendant from possessing or consuming alcohol. *State v. Steuerwald*, No. 159-2-11 WnCr, Conditions of Release (Vt. Super. Ct. Feb. 25, 2011). Defendant's blood-alcohol content at 1:04 a.m., about 25 minutes after the police officers arrived, was .218.

¶ 10. Defendant's mother has concerns that her son is suffering from a severe

mental illness. Additionally, complainant averred that defendant believes he has post-traumatic stress disorder. Defendant was evaluated for competency and sanity. The evaluation is not in evidence. Based on a September 28, 2012 agreement between the parties and the medical report of a doctor, defendant was deemed competent to stand trial.

¶ 11. Mother resides in a Buddhist Monastery in Calais, Vermont, and would provide defendant with a residence if released. She represented that the monastery does not permit alcohol and stated that she would report any violations of conditions to the police, including defendant's use of drugs or alcohol. Mother testified that defendant has never been aggressive with her or other family members. She does not believe that defendant would hurt her and, in the alternative, that her martial arts training would allow her to subdue defendant in the event of violent behavior. Mother also testified that one other person lives at the monastery, and quite a few people visit the monastery on a regular basis. The monastery is undergoing renovations, and so people are coming every day to paint as well as install new walls and lights.

## II. Conclusions of Law

¶ 12. The sole issue on appeal is whether the proposed conditions of release will reasonably prevent defendant's threat of physical violence to any person. De novo review of a challenged conclusion requires a justice to reach "an independent determination based on [the] record." *State v. Madison*, 163 Vt. 360, 363, 658 A.2d 536, 539 (1995). The findings clearly and convincingly show that defendant poses a substantial threat of physical violence.

¶ 13. Defendant's act of strangling complainant was violent in the extreme. Sergeant Cleveland perceived that defendant would have killed complainant if the police officers responded just a few minutes

later. Defendant continued to strangle complainant even in the known presence of the officers and despite their dramatic intervention. Sergeant Cleveland had to forcibly remove defendant from complainant. Indeed, according to Sergeant Cleveland, defendant was so determined to hurt complainant, nothing was going to stop defendant except police force.

¶ 14. The potential lethality of defendant's violence is compounded by his alcohol use. Defendant was highly intoxicated despite court-ordered conditions of release prohibiting his possession or consumption of alcohol. Mother likewise testified that defendant "can never get well if he *continues* to use any alcohol or drugs." No evidence in the record or at the hearing indicated that defendant is over his alcohol abuse, or that his judgment would be reliably unimpaired.

¶ 15. The findings also clearly and convincingly show that no condition or combination of conditions of release will reasonably prevent defendant's threat of physical violence. The proposal to release this man, who violently strangled his girlfriend and who evinces significant alcohol abuse issues, to the care and supervision of his mother and to unknown and unaffiliated others, at a monastery is inadequate to protect the public and complainant from serious bodily injury.

¶ 16. Even assuming the monastic residence can provide supervision twenty-four hours a day, seven days a week, as proffered by defendant, it is not guaranteed and is entirely dependent on defendant's voluntary compliance. Mother's credible commitment to call police in the event of defendant drinking or absconding is still no prophylactic to defendant's demonstrated dangerousness. Mother's custody of defendant would be unsecured. Alcohol is ubiquitous and available almost at will. Defendant cannot be relied upon to abide by no-alcohol conditions of release and does not obey court orders. Short of actual custody without access to

alcohol, the real risk of defendant drinking and resorting to life-threatening violence cannot, as a practical matter, be reasonably controlled.

*For the reasons stated herein, defendant shall continue to be held without bail pursuant to 13 V.S.A. § 7553a.*