2015 VT 35

**STATE of Vermont v. Eric WEAVER**

[114 A.3d 1151]

No. 15-008

¶ 1. January 23, 2015. Defendant was held without bail pursuant to 13 V.S.A. § 7553a on felony charges of aggravated domestic assault, *id.* § 1043(a)(2), and unlawful restraint, *id.* § 2406(a)(3). These charges arise from an incident on November 17, 2014 at the home defendant then shared with his former girlfriend, the complainant. Defendant appealed to this Court and a de novo review was held on January 21, 2015, before Superior Judge Thomas J. Devine, sitting by special designation over the single-justice-review proceeding as provided by 13 V.S.A. § 7556(d) and Vermont Rule of Appellate Procedure 9. The State was represented by deputy state's attorney Emily McCarthy. Defendant was present and represented by attorney Sara Reed.

¶ 2. The facts as found by the trial court are not in dispute. At the de novo hearing, defendant presented additional testimony from his fiancée.

¶ 3. Based on the testimony in the record, together with the unchallenged findings from the trial court's decision and the additional testimony of defendant's fiancée, the Court finds the following facts established by clear and convincing evidence.

## I. Findings of Fact

¶ 4. Defendant and complainant met in June 2014. They soon began an intimate relationship. Thereafter, complainant falsely claimed to defendant that she was pregnant with his child. Defendant moved into the small, two-bedroom apartment that complainant shared with her roommate, the roommate's boyfriend, and complainant's son from a prior relationship. Defendant and complainant slept in the living room. The child occupied one bedroom. The roommate and her boyfriend occupied the other bedroom. After a few months of cohabitation, defendant discovered that complainant was not pregnant.

¶ 5. Complainant testified that defendant was usually nice to her unless "a man was mentioned or if he felt threatened by some other man." If defendant saw complainant with a man, he would talk to her about "how uncomfortable it made him feel." Defendant told complainant that if people lie to him or try to cheat him, there are repercussions. Defendant said if he ever caught her with another man, he would hurt them both.

¶ 6. By way of illustration, defendant bragged about something he had done when he was fifteen years old (defendant is now thirty-three). Specifically, defendant explained that a certain person owed him a lot of money. Defendant kidnapped this person and this person's girlfriend. He brought them to a basement room. Defendant's plan was to keep them there without food. While these persons were being held in the basement, others came and raped the girlfriend in front of the person who owed defendant the money. Defendant told complainant this story many times.

¶ 7. Defendant's criminal record shows Pennsylvania convictions for kidnapping and involuntary sexual intercourse from

this time period. Despite his status as a juvenile at the time, defendant was sentenced to serve eight to fourteen years. An adult co-defendant who acted with defendant was charged with corruption of a minor.

¶ 8. On November 17, defendant and complainant were in bed. It was 2:30 a.m. The landlord had notified them they were all being evicted the following day. As they tried to sleep, complainant's phone rang. She did not answer. The phone rang a second time. Defendant asked who it was. Complainant insisted she did not know. Defendant took the phone from her and called the unknown number back. A man's voice answered. When defendant spoke, the other person hung up. Defendant became upset. He repeatedly demanded to know who had called. Complainant insisted it was a wrong number. Defendant then said, "I have a trick for your ass."

¶ 9. Defendant went into the kitchen. He returned with a knife. Defendant stepped on the bed with his feet on either side of complainant. Defendant held the knife aloft with one hand and braced his other arm against the wall, leaning over her. Defendant demanded that she tell him who had called.

¶ 10. Defendant then announced he had "another trick for [her] ass." Defendant went into the roommate's bedroom and asked for some "baby oil." The roommate's boyfriend got dressed and came out of the room, but he did not intervene in the situation. Defendant continued to hold the knife. Complainant pleaded for her son's sake to be allowed to leave. Defendant said he did not care about the child. Defendant told complainant, "You're not going anywhere."

¶ 11. Defendant returned to the kitchen with the baby oil. He heated the baby oil in a pan on the stove. Complainant testified she was "frozen in fear." She then got off the bed, ran inside her roommate's bedroom and shut the door. She told her roommate to call the police. The roommate made no move to do so.

¶ 12. The complainant stood inside, braced against the wooden door. Defendant returned and began pushing against her. A cracking sound was heard. Defendant entered the bedroom holding a pan of hot oil. The roommate's boyfriend asked defendant "if he was really going to do that?" Defendant told the roommate he was "just playing with her." Yet defendant did not put the pan of hot oil down. Defendant told complainant, "I'm not going to kill you. I want to scar you." Defendant continued to question complainant as to the identity of the caller. Eventually the incident came to an end and complainant fell asleep. When she awoke the next morning, defendant was gone.

¶ 13. Complainant went to the Burlington Police Department that morning. After interviewing complainant, officer Thomas Chenette gained access to the now vacant apartment with help from the property manager. Officer Chenette observed a knife in the kitchen sink which had what appeared to be some kind of clear oil on the tip of the blade. Officer Chenette also observed one of the bedroom doors was cracked, as was the door casing. Officer Chenette took photographs. At the hearing, complainant agreed the cracks in the bedroom door and the door casing had not been there until the incident on November 17.

¶ 14. Defendant was arrested on November 21, 2014. During the three-and-a-half days between the incident and defendant's arrest, defendant did not contact complainant.

¶ 15. After the eviction, complainant moved to a new address. She did not tell defendant where she was living.

¶ 16. Defendant's fiancée lives in an apartment in Burlington. She testified that defendant moved in with her after this incident on November 17 and lived there until his arrest a few days later.

Defendant's name had been on the lease since mid-October in anticipation of that move.

¶ 17. Defendant's fiancée is employed full-time at the University of Vermont Medical Center. She has maintained this employment for thirteen years. She works during the day. She is willing to serve as a responsible adult into whose custody defendant could be released under her strict, twenty-four-hour supervision. See 13 V.S.A. § 7554(a)(1)(A) (providing that trial court may impose, as condition of release, that defendant be placed "in the custody of a designated person . . . agreeing to supervise him or her"). She understands the charges are serious. Defendant has told her the charges are based on lies. She believes in defendant's innocence. She believes that complainant is "crazy." Nonetheless, she testified she would report defendant to the police if he attempted to contact the victim, or violated his curfew or other conditions the court might impose.

¶ 18. Defendant's fiancée thinks she could take up to a twelve-week "family medical leave" from her employment. She has discussed taking leave with her supervisor, but she has not yet discussed it with the human resources manager, whose ultimate approval would be required.

## II. Conclusions of Law

¶ 19. An accused may be held without bail under 13 V.S.A. § 7553a when charged with a felony:

> [a]n element of which involves an act of violence against another person . . . [and] when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of

release will reasonably prevent the physical violence.

¶ 20. There is no question the aggravated domestic-assault charge recites that defendant committed an act of violence against another person. Moreover, the evidence of guilt is great, as defendant concedes. The complainant's testimony is supported by some physical evidence in the form of the knife with what appears to be an oily substance along the blade, together with the freshly-cracked bedroom door and door casing.

¶ 21. The sole challenges to the hold-without-bail order concern whether there is clear and convincing evidence that defendant poses a substantial threat of physical violence to any person, and whether there is no condition or combination of conditions of release that can reasonably prevent the physical violence.

¶ 22. Clear and convincing evidence is not necessarily uncontradicted evidence. This Court has held that this standard "requires proof that the existence of a contested fact is highly probable rather than merely more probable than not." *State v. Zorn*, 2013 VT 65, ¶ 18, 195 Vt. 381, 88 A.3d 1164 (citing *In re N.H.*, 168 Vt. 508, 512, 724 A.2d 467, 470 (1998)).

¶ 23. In assessing whether the threat of physical violence is substantial, the Court considers five significant aspects of the record. First, we have complainant's testimony that defendant told her on multiple occasions that he would hurt her if he ever found her with another man and that there are "repercussions" for people who try to cheat him or lie to him.

¶ 24. Second, there is the fact that defendant has been convicted of serious felony offenses. His criminal record cuts both ways, however. While the offenses were serious enough to warrant a lengthy incarcerative sentence, defendant committed these crimes over sixteen years ago, when still a juvenile. This Court has often and recently recognized that adoles-

cents " 'lack the experience, perspective, and judgment' " of adults. *In re E.W.*, 2015 VT 7, ¶ 18, 198 Vt. 311, 114 A.3d 112 (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 274, 131 S. Ct. 2394, 2404 (2011)). Moreover, defendant is now thirty-three years old. There is, in other words, no showing that defendant has established a pattern of repeated violations of the law or "displayed a pattern of behavior inconsistent with the ability to comply with court orders." *State v. Hoffman*, 2007 VT 141, ¶ 6, 183 Vt. 547, 944 A.2d 912 (mem.).

¶ 25. Yet, the prior offenses do not seem so distant given the testimony that defendant repeatedly bragged to complainant about them to show what happens to those who cross him. The fact that, at age thirty-three, defendant is still using this incident as a means of intimidation is especially troubling.

¶ 26. Third, there is the testimony from the complainant as to the nature of the offense itself. Defendant became instantaneously enraged when he heard a man's voice on complainant's phone. He retrieved a knife and brandished it while straddling the complainant. Defendant told the complainant she was "not going anywhere." The complainant describes being "frozen in fear." Defendant then obtained baby oil and boiled it in a pan. Defendant told complainant he was not going to kill her, he was only going to "scar her." This testimony depicts a volatile and dangerous individual who is determined to bend the complainant to his will through intimidation and violence.

¶ 27. Fourth, defendant makes much of the fact that complainant did not contact the police until the next morning and that he did not threaten complainant in the days leading up to his arrest. Yet the complainant's delay in reporting to the police could be attributable to many factors, including her fear. Moreover, the evidence shows that complainant moved to a new address which was unknown to defendant.

¶ 28. Finally, there is the fact that defendant is now aware that complainant has testified against him.

¶ 29. The Court concludes there is clear and convincing evidence that defendant's release would pose a substantial threat of violence to complainant.

¶ 30. Defendant's final challenge is to the success of the State in showing that no condition or combination of conditions of release will reasonably prevent the physical violence. Defendant has offered to be released into the custody of his fiancée who will supervise him under a strict, twenty-four-hour curfew. See 13 V.S.A. § 7554(a)(1)(A).

¶ 31. This proposal is undercut, however, by the fact that defendant's fiancée works full-time. Her hope to qualify for a twelve-week family-medical leave is not supported by evidence that she will in fact be eligible for such a leave. Moreover, what would happen after any twelve-week leave ends remains unclear.

¶ 32. However, there is a more significant concern than the fiancée's work schedule, and that is the evidence that defendant is capable of acts of extreme dangerousness. Defendant's loss of control in the face of a stray phone call, his brandishing of a knife and his threats to scar the complainant with hot baby oil are the acts of a volatile and dangerous person. *State v. Steuerwald*, 2012 VT 98, ¶ 16, 193 Vt. 663, 58 A.3d 970 (mem.) ("Mother's credible commitment to call police in the event of defendant drinking or absconding is still no prophylactic to defendant's demonstrated dangerousness.").

¶ 33. The Court concludes there is clear and convincing evidence that no condition or combination of conditions will reasonably prevent the physical violence. Thus, for the reasons stated herein, the decision of the criminal division to hold defendant without bail pursuant to 13 V.S.A. § 7553a is affirmed.

*Affirmed.*

Motion for reargument denied February 13, 2015