# ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-215

JUNE TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Franklin Unit, |
| | } | Criminal Division |
| Dustin LaFountain | } | |
| | } | DOCKET NO. 582-6-15 Frcr |
| | } | |
| | | Trial Judge: Alison S. Arms |

In the above-entitled cause, the Clerk will enter:

Defendant Dustin LaFountain was charged with aggravated domestic assault in violation of 13 V.S.A. § 1043(a)(2), in an information dated June 1, 2015. At arraignment on June 2, 2015, defendant was ordered held without bail, pursuant to 13 V.S.A. § 7553a.

The charge stems from an incident on May 29, 2015 that occurred in an open field located near 13 Guyette Circle in St. Albans, Vermont. Defendant appealed to this Court and a de novo review was held on June 18, 2015 before the undersigned, sitting by special designation over the single-justice-review proceeding as provided by 13 V.S.A. § 7556(d) and V.R.A.P. 9.

## Findings of Fact

Based on testimony in the record,[1] I find the following facts established by clear and convincing evidence. Shortly after 8:00 p.m. on May 29, 2015, Jordin Lumsden was looking out her kitchen window toward a large open field behind her house at 13 Guyette Circle in St. Albans. She saw a male and a female standing in the middle of the field about 160 feet behind the house. As she watched the two individuals, she sensed they were standing there for no apparent reason. She grabbed a pair of binoculars and looked to see what was going on.

She observed defendant standing over the putative victim and pointing a large knife at her. He appeared to be talking on his cell phone and slowly circling the victim. Defendant's distance from the putative victim varied between one and six feet. Defendant was wearing jeans with no shirt, had tattoos on his hands, and was pointing a knife at the putative victim. Ms.

---

[1] I admitted the 911 tape recording of the call placed by Mrs. Lumsden to the police as she and her daughter watched the events between defendant and the putative victim unfolding in the field. Defendant objected to its admission, but I found it admissible under State v. Muscari, 174 Vt. 101, 107-08 (2002). See Exhibit 1. Also admitted for the purposes of the appeal was the officer's body-camera recording of the arrest of defendant. See Exhibit 5.

Lumsden could see the pair clearly and with binoculars could clearly see that the putative victim was wearing a pink shirt with a gray camisole underneath. She was crying and periodically using her shirt to wipe her eyes. At times, the tip of the knife came within a foot of her. Defendant appeared angry and aggressive. When he ended his telephone conversation, he began circling the putative victim over and over. She was then sitting on the ground motionless, hands covering her face, and seemingly staring in the direction of Ms. Lumsden. Fearing an assault was happening, Ms. Lumsden called out to her mother, who was also with her in the kitchen, to call 911, which she did. The 911 operator dispatched three St. Albans City police officers to the scene, including Sergeant Josephson. The 911 call was admitted into evidence for the purposes of this appeal as Exhibit 1.

Sergeant Josephson arrived and got information from the Lumsdens, who were hysterical.[2] He ran out to the Lumsden's backyard and into the field in the direction of defendant and the putative victim. He saw the two in the middle of the field about one hundred yards away from the Lumsden residence. He called out for defendant to put his hands up and lie face down and for the putative victim to stay put. Defendant complied and was immediately handcuffed by an officer. In defendant's right front pocket, the officer found a large combat or survival style knife. See Exhibit 3. It was not in a sheath or holster. Defendant was arrested. The putative victim professed no knowledge of what was happening. She had been crying, and her eyes were bloodshot.

The putative victim testified that defendant never threatened her at any point during the incident. She gave varying accounts as to why defendant had the knife with him. She was uncertain about where she presently was living, giving various possibilities as to the name of her street. She did testify credibly that, during the time in the field, defendant was very angry, agitated, and upset. She told the police on the evening in question that defendant was "crazy" and "weird' but now states that it is being taken out of context. Overall, much of the putative victim's testimony was not credible.

Defendant's aunt, Melissa Wood, testified that he could live with her should he be released. Ms. Wood testified that she lived on North Avenue in Burlington and that defendant would not be supervised between 7:15 and 2:30 daily due to her and her partner's work schedules. She agreed to report any violations of conditions of release by defendant to police.

---

[2] Sergeant Josephson was equipped with and wearing a Taser system body camera during the incident. A portion of the recording he made on the evening in question was admitted provisionally as Exhibit 5. Defendant challenged the admissibility of the recording on the grounds that the State could not establish a chain of custody for the recording. The officer testified that he could not view or manipulate the recording but rather was trained to insert the camera into a docking/charging station and that the images were then uploaded to the Taser site. Only then, on request, can the police regain copies of the images. The officer testified that he did just that and that the images shown in Exhibit 5 were a fair and accurate representation of what he viewed himself during the incident. I find no flaw with the chain of custody here and admits Exhibit 5 without conditions. State v. Stevens, 137 Vt. 473, 477 (1979) ("The chain [of custody] need not be perfectly established.").

Defendant has two felony convictions for grand larceny and impeding a public officer; failed to appear in court on February 8, 2012; violated probation twice on July 3, 2012 and April 19, 2011; and was satisfactorily discharged from probation on June 22, 2010.

Conclusions of Law

A defendant may be held without bail under 13 V.S.A. § 7553a when charged with a felony

> [a]n element of which involves an act of violence against another person . . . [and] when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

By statute, the aggravated domestic assault that defendant is charged with constitutes an act of violence against another person. 13 V.S.A. § 1043(c). On appeal, defendant challenges the trial court's findings regarding the evidence of guilt and whether any combination of conditions of release would reasonably prevent the physical violence, warranting denial of bail.

On the first point, as to whether the evidence of guilt is great, this Court must consider "whether the evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." State v. Duff, 151 Vt. 433, 439 (1989) (quotation omitted). The threshold for great evidence of guilt lies between "probably cause" and "beyond a reasonable doubt," and we have adopted the standard of Vermont Rule of Criminal Procedure 12(d) for review under § 7553a. Id. at 440.

Defendant principally challenges the trial court's holding on the element of intent—specifically that he did not intend to threaten the putative victim with the knife. He argues that the State's key witnesses, the Lumsdens, were viewing a very dramatic situation from a great distance, and were not cognizant of the context of defendant's actions. In support, defendant points to the testimony of the putative victim, who stated that she did not at any time feel threatened by defendant. Defendant also points to Sergeant Josephson's body-camera footage, in which the putative victim expresses shock and surprise at defendant's arrest. In short, defendant contends that if he was brandishing the knife (a point that he disputes), he did not intend to threaten the putative victim. I disagree.

We have consistently held that circumstantial evidence alone is enough to show guilt beyond a reasonable doubt. See State v. Warner, 151 Vt. 469, 472 (1989); State v. Bourassa, 137 Vt. 62, 64-65, 68-69 (1979). Based on the evidence presented, a reasonable jury could find beyond a reasonable doubt that defendant was threatening the putative victim with the knife. Not one, but two disinterested witnesses observed what was happening in the field behind their home, and were so worried about what was happening that they called the police. Ms. Lumsden credibly testified that she clearly saw defendant circling the putative victim with a knife pointed at her. She also observed, even from a distance, defendant was upset, which was later corroborated by the putative victim's own testimony.

3

When the police arrived, the Lumsdens were hysterical because of what they were witnessing. As Sergeant Josephson took defendant into custody, he removed a large survival knife from defendant's right front pocket, which was admitted as Exhibit 3. Sergeant Josephson also observed that the putative victim had been crying, although she expressed surprise that the police were placing defendant under arrest. Although defendant attempted to craft a suitable alternative explanation for why he was carrying a survival knife, I am convinced that circumstantial evidence shows great evidence of guilt, and affirm the ruling of the trial court in that regard.

Defendant next questions whether there is clear and convincing evidence that he poses a substantial threat of physical violence to any person, and whether there is no condition or combination of conditions of release that can reasonably prevent the physical violence. Clear and convincing evidence is not necessarily uncontradicted evidence. This Court has held that this standard "requires proof that the existence of a contested fact is highly probable rather than merely more probable than not." State v. Zorn, 2013 VT 65, ¶ 18, 195 Vt. 381 (citing In re N.H., 168 Vt. 508, 512 (1998)).

In assessing whether the threat of physical violence is substantial, this Court chiefly considers defendant's age, criminal record, and the allegations against him. At the age of nineteen, defendant has already gained two serious felony convictions, failed to appear in court, and twice violated the conditions of his probation. While we recognize that adolescents "lack the experience, perspective, and judgment" of adults, see In re E.W., 2015 VT 7, ¶ 18, defendant has established a pattern of repeated violations of the law, and has demonstrated "a pattern of behavior inconsistent with the ability to comply with court orders." State v. Hoffman, 2007 VT 141, ¶ 6, 183 Vt. 547 (mem.). Furthermore, the testimony of the Lumsdens describes defendant, in a highly agitated state, circling the putative victim with a survival knife pointed directly at her, sometimes as little as one foot away. The testimony depicts an unstable and tense individual who, even from a great distance, appears to be using the threat of violence to intimidate the putative victim. For these reasons, I find that there is clear and convincing evidence that defendant's release would pose a substantial threat of violence to putative victim, and the trial court's ruling on this point will not be disturbed.

Finally, defendant challenges the State's showing that no condition or combination of conditions of release will reasonably prevent the physical violence. Defendant has offered to be released into the custody of his aunt, Melissa Wood, who works at the Department of Motor Vehicles. Ms. Wood agreed to report any violations of conditions of release by defendant to the police. Ms. Wood resides in Burlington with her fiancé, and credibly testified that defendant would not have access to a vehicle for the purposes of making his way back to St. Albans.

Defendant's proposal, however, is undermined by the fact that he would not be supervised between 7:15 and 2:30 daily due to Ms. Wood's and her partner's work schedules. Even though defendant would not have access to a vehicle, it would be easy for him to make contact with the putative victim and arrange transport to and from St. Albans in the time that he is unsupervised. Given the allegations against defendant, I am not convinced that Ms. Wood will be able to exercise adequate supervision over him. State v. Steuerwald, 2012 VT 98, ¶ 16, 193 Vt. 663 (mem.) ("Mother's credible commitment to call police in the event of defendant drinking or absconding is still no prophylactic to defendant's demonstrated dangerousness.").

4

For the reasons stated herein, I conclude that there is clear and convincing evidence that no condition or combination of conditions will reasonably prevent physical violence. The trial court's decision to hold defendant without bail pursuant to 13 V.S.A. § 7553a is affirmed.

Affirmed.

FOR THE COURT:

_____

Howard E. VanBenthuysen, Superior Judge,
Specially Assigned